1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  X. JAY ALVAREZ (134781)
   JEFFREY D. LIGHT (159515)
3  JULIE A. KEARNS (246949)
   655 West Broadway, Suite 1900
4  San Diego, CA  92101-3301
   Telephone:  619/231-1058
5  619/231-7423 (fax)
   jaya@rgrdlaw.com
6  jeffl@rgrdlaw.com
   jkearns@rgrdlaw.com
7
   Lead Counsel for Lead Plaintiff
8
   [Additional counsel appear on signature page.]
9
                    UNITED STATES DISTRICT COURT
10
                 SOUTHERN DISTRICT OF CALIFORNIA
11
12  CONSTRUCTION WORKERS       )  Master File No.
    PENSION TRUST FUND – LAKE   )    3:10-cv-02502-CAB-DHB
    COUNTY AND VICINITY,        )
13  Individually and on Behalf of All Others )  CLASS ACTION
    Similarly Situated,          )
14                              )  MEMORANDUM OF POINTS AND
                                )  AUTHORITIES IN SUPPORT OF
                   Plaintiff,   )  MOTION FOR FINAL APPROVAL
15                              )  OF CLASS ACTION SETTLEMENT
         vs.                    )  AND PLAN OF ALLOCATION OF
16                              )  SETTLEMENT PROCEEDS
    GENOPTIX, INC., et al.,     )
17                              )
                   Defendants.  )  DATE:     June 20, 2014
18  _____ )  TIME:     3:00 p.m.
19                                 CTRM:     4C, The Honorable Cathy
                                              Ann Bencivengo
20
21
22
23
24
25
26
27
28

938915_1

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT.................................................................... 1

II.   THE STANDARDS GOVERNING JUDICIAL APPROVAL OF
      CLASS ACTION SETTLEMENTS ................................................. 4

III.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
      ADEQUATE ........................................................................................ 7

      A.    The Settlement Enjoys a Presumption of Reasonableness
            Because It Is the Product of Arm's-Length Settlement
            Negotiations ........................................................................... 7

      B.    The Strength of Lead Plaintiff's Case When Balanced Against
            the Risk, Expense, Complexity, and Likely Duration of Further
            Litigation Supports Approval of the Settlement ................................... 8

            1.    The Risks of Proving Liability .................................................... 9

            2.    The Risks of Proving Loss Causation and Damages................ 12

            3.    The Complexity, Expense, and Likely Duration of the
                  Litigation Justifies the Settlement ............................................ 15

      C.    Lead Plaintiff Had Sufficient Information to Determine the
            Propriety of Settlement ........................................................................ 16

      D.    The Recommendations of Experienced Counsel After Extensive
            Litigation and Arm's-Length Settlement Negotiations Favor the
            Approval of the Settlement .................................................................. 17

IV.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE.............. 18

V.    CONCLUSION ............................................................................................ 19

# TABLE OF AUTHORITIES

**Page**

## CASES

*Beecher v. Able,*
  575 F.2d 1010 (2d Cir. 1978) ...................................................................... 18

*Boyd v. Bechtel Corp.,*
  485 F. Supp. 610 (N.D. Cal. 1979).................................................................. 8

*Bryant v. Avado Brands, Inc.,*
  100 F. Supp. 2d 1368 (M.D. Ga. 2000),
  *rev'd on other grounds and remanded sub nom.,*
  *Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001) ............................................ 9

*Carson v. Am. Brands, Inc.,*
  450 U.S. 79 (1981) ...................................................................................... 6

*Church v. Consol. Freightways, Inc.,*
  No. C-90-2290-DLJ, 1993 U.S. Dist. LEXIS 6439
  (N.D. Cal. May 3, 1993)................................................................................ 5

*Churchill Vill., L.L.C. v. GE,*
  361 F.3d 566 (9th Cir. 2004) ........................................................................ 4

*Dura Pharms., Inc. v. Broudo,*
  544 U.S. 336 (2005) .................................................................................... 12

*Ellis v. Naval Air Rework Facility,*
  87 F.R.D. 15 (N.D. Cal. 1980),
  *aff'd*, 661 F.2d 939 (9th Cir. 1981) .......................................................... 5, 7, 16

*Girsh v. Jepson,*
  521 F.2d 153 (3d Cir. 1975) ......................................................................... 8

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ....................................................................... 6

*In re Apollo Grp., Inc. Sec. Litig.,*
  No. CV 04-2147-PHx-JAT, 2008 U.S. Dist. LEXIS 61995
  (D. Ariz. Aug. 4, 2008),
  *rev'd*, No. 08-16971, 2010 U.S. App. LEXIS 14478
  (9th Cir. June 23, 2010)............................................................................... 12

- ii -                    3:10-cv-02502-CAB-DHB

**Page**

*In re BankAtlantic Bancorp, Sec. Litig.*,
   No. 07-61542-CIV-UNGARD, 2011 U.S. Dist. LEXIS 48057
   (S.D. Fla. Apr. 25, 2011),
   *aff'd*, 688 F.3d 713 (11th Cir. 2012) ................................................................. 12

*In re Chicken Antitrust Litig. Am. Poultry*,
   669 F.2d 228 (5th Cir. 1982) ........................................................................... 18

*In re Delphi Corp. Sec.*,
   248 F.R.D. 483 (E.D. Mich. 2008) .................................................................... 1

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
   142 F.R.D. 588 (S.D.N.Y. 1992) ....................................................................... 18

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555
   (C.D. Cal. June 10, 2005) ................................................................................ 19

*In re Ikon Office Solutions, Inc.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ............................................................ 9, 15, 18

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ........................................................................... 17

*In re Mfrs. Life Ins. Co. Premium Litig.*,
   No. MDL 1109, 1998 U.S. Dist. LEXIS 23217
   (S.D. Cal. Dec. 21, 1998) ................................................................................ 14

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ......................................... 4, 17, 18, 19

*In re Oracle Corp. Sec. Litig.*,
   No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995
   (N.D. Cal. June 19, 2009),
   *aff'd*, 627 F.3d 376 (9th Cir. 2010) ................................................................. 12

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ........................................................................... 4, 5

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
   460 F.3d 1217 (9th Cir. 2006) .......................................................................... 4

**Page**

*In re Portal Software, Inc. Sec. Litig.*,
No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886
(N.D. Cal. Nov. 26, 2007) ...................................................................... 19

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) ..................................................... 10

*In re Tyco Int'l, Ltd.*,
535 F. Supp. 2d 249 (D.N.H. 2007) ........................................................ 12

*In re Veeco Instruments Sec. Litig.*,
No. 05 MDL 0165 (CM), 2007 U.S. Dist. LEXIS 85629
(S.D.N.Y. Nov. 7, 2007) ........................................................................ 13

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985),
*aff'd*, 798 F.2d 35 (2d Cir. 1986) ..................................................... 8, 13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
720 F. Supp. 1379 (D. Ariz. 1989),
*aff'd sub nom., Class Plaintiffs v. Seattle*, 955 F.2d 1268
(9th Cir. 1992) .......................................................................................... 5

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
No. MDL C-07-1841 (EMC), 2011 U.S. Dist. LEXIS 84541
(N.D. Cal. Aug. 2, 2011) .......................................................................... 6

*Lewis v. Newman*,
59 F.R.D. 525 (S.D.N.Y. 1973) ............................................................... 9

*Linney v. Cellular Alaska P'ship*,
No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300
(N.D. Cal. July 18, 1997),
*aff'd*, 151 F.3d 1234 (9th Cir. 1998) ....................................................... 7

*Marshall v. Holiday Magic, Inc.*,
550 F.2d 1173 (9th Cir. 1977) .................................................................. 5

*Milstein v. Huck*,
600 F. Supp. 254 (E.D.N.Y. 1984) ......................................................... 15

**Page**

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*,
  797 F.2d 799 (9th Cir. 1986) ................................................................. 4

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ............................................ 6, 8, 17

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ...................................................... *passim*

*Republic Nat'l Life Ins. Co. v. Beasley*,
  73 F.R.D. 658 (S.D.N.Y. 1977) ............................................................. 9

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002) ............................................................ 16

*Robbins v. Koger Props.*,
  116 F.3d 1441 (11th Cir. 1997) ....................................................... 12

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...................................................... 7, 17

*Sekuk Global Enters. v. Apollo Grp. Inc.*,
  No. 2:04-cv-02147-JAT (D. Ariz) ................................................... 14

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ............................................................... 5

*Util. Reform Project v. Bonneville Power Admin.*,
  869 F.2d 437 (9th Cir. 1989) ............................................................. 4

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ............................................................. 4

*White v. NFL*,
  822 F. Supp. 1389 (D. Minn. 1993) ................................................. 18

*Williams v. First Nat'l Bank*,
  216 U.S. 582 (1910) ........................................................................... 4

*Woo v. Home Loan Grp., L.P.*,
  No. 07-CV-202 H (POR), 2008 U.S. Dist. LEXIS 65144
  (S.D. Cal. Aug. 25, 2008) .................................................................. 5

Page

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 1 ........................................................................................................ 4
    Rule 23 ..................................................................................................... 18
    Rule 23(e) .............................................................................................. 1, 5

17 C.F.R.
    §240.10b-5 ............................................................................................... 12

**SECONDARY AUTHORITIES**

Kevin LaCroix,
    *After Rare Trial and Lengthy Appeals, Apollo Group*
    *Securities Suit Finally Settles for $145 Million,*
    The D&O Diary (Dec. 5, 2011) ............................................................. 14

## I.      PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff City of Ann Arbor Employees' Retirement System ("City of Ann Arbor") submits this memorandum in support of its motion for final approval of the Settlement of this action for $7,700,000 (plus interest) in cash, and for approval of the Plan of Allocation of the Settlement proceeds.  The terms of the Settlement are set forth in the Stipulation of Settlement dated February 10, 2014 ("Stipulation" or "Settlement") which was previously filed with the Court.[1]  Dkt. No. 62-2.  The Settlement follows two rounds of motion to dismiss briefing, the production and analysis of a significant volume of documents and extensive arm's-length settlement negotiations.  Ultimately the parties reached an agreement-in-principle to settle the Litigation with the substantial assistance of the Honorable Layn R. Phillips (Ret.), a highly respected and experienced mediator.[2]  Lead Counsel believe that the Settlement represents an excellent resolution of this complex litigation that fully takes into account the specific risks of this case.  Alvarez Decl., ¶¶4, 5, 63, 76.[3]  Importantly, the Lead Plaintiff, who was actively involved in the Litigation, authorized counsel to settle the action and believes it represents an excellent recovery.  *See* Declaration of Jeremy Flack in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Award of Attorneys' Fees and Expenses ("Lead Plaintiff Decl."), ¶4.  Lead Plaintiff alleges that Defendants violated the federal securities laws by making false and

---

[1]    All capitalized terms not defined herein shall have the same meanings set forth in the Stipulation.

[2]    *See, e.g.*, *In re Delphi Corp. Sec.*, 248 F.R.D. 483, 498 & n.14  (E.D. Mich. 2008) (recognizing "the outstanding work done by Judge Phillips" in settlement negotiations and "the added benefit of the insight and considerable talents of [this] former federal judge who is one of the most prominent and highly skilled mediators of complex actions").

[3]    The Court is respectfully referred to the accompanying Declaration of X. Jay Alvarez in Support of Motion for Final Approval of Class Action Settlement, Plan of Allocation of Settlement Proceeds, and an Award of Attorneys' Fees and Expenses for an overview of Lead Plaintiff's claims, the risks presented by continued litigation, the procedural and factual history of the Litigation, as well as the settlement negotiations.

misleading statements that misrepresented true customer demand for Genoptix's primary source of revenue – diagnostic cancer testing services – and that Defendants knew, but failed to disclose, that demand for the Company's services was being significantly and negatively impacted by its operation as an out-of-network health care provider, and that it had lost its largest customer account, the Georgia Cancer Center, due to disagreements over billing issues.

Defendants vigorously opposed the action from the outset, and aggressively pursued dismissal on several theories.  Defendants were initially successful in dismissing Lead Plaintiff's claims.  Undaunted, Lead Plaintiff, as a result of counsel's ongoing investigation, filed the Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws and Jury Demand (the "Amended Complaint").  It was not until Lead Plaintiff successfully, in part, opposed Defendants' motion to dismiss the Amended Complaint; and obtained discovery, including over 57,000 pages of documents that meaningful settlement negotiations began.

If not for this Settlement, the case would have continued to be fiercely contested by the parties with the ultimate outcome uncertain.  Defendants have demonstrated a commitment to defend this case through and beyond trial, if necessary, and are represented by well-respected and highly capable counsel from Cooley LLP.  Lead Plaintiff would face substantial risks in proving loss causation, materiality, as well as scienter – Defendants' knowledge of the alleged false and misleading statements.  Moreover, certain of the alleged false statements may have been found to be protected by the safe-harbor provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA").

Lead Counsel, who are well-respected and highly experienced in prosecuting securities fraud class actions, have concluded that the Settlement is an excellent result under the circumstances and is in the best interest of the Class.  This conclusion is based on all the circumstances present here, including the substantial risks, expense,

and uncertainties in continuing the action through completion of discovery, summary judgment motion(s) after discovery, trial, and probable appeal; the relative strengths and weaknesses of the claims and defenses asserted; a complete analysis of the evidence obtained and the legal and factual issues presented; past experience in litigating complex actions similar to the present action; and the serious disputes between the parties concerning the merits and damages.

While the deadline for filing objections – May 22, 2014 – has not yet passed, Members of the Class appear to agree with Lead Counsel's conclusion. Pursuant to the Court's Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), over 16,000 copies of the Notice and Proof of Claim and Release were sent to potential Class Members. *See* paragraphs 3 through 10 to the accompanying Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Proposed Settlement of Class Action and the Proof of Claim and Release Form, B) Publication of the Summary Notice, and C) Internet Posting ("Sylvester Decl."). In addition, a Summary Notice was published in *Investor's Business Daily* and once over the *Business Wire. Id.*, ¶13. The Stipulation, Notice, Proof of Claim and Release, and Preliminary Approval Order[4] were also placed on the Claims Administrator's website on April 7, 2014. *Id.*, ¶12. The Notice informed potential Class Members of the terms of the Settlement, their right to object or opt-out of the Settlement and the procedure for doing so, the Plan of Allocation of settlement proceeds, and counsel's request for an award of attorneys' fees and expenses. While the deadline for objecting is May 22, 2014, to date not a single Class Member has objected to any aspect of the Settlement, Plan of Allocation, or Lead Counsel's request for an award of attorneys' fees and expenses.[5]

---

[4]   The Stipulation, Notice, Proof of Claim and Release, and the Preliminary Approval Order were also posted on Lead Counsel's website.

[5]   In accordance with the Preliminary Approval Order (Dkt. No. 69), any objections will be addressed by Lead Counsel on or before June 13, 2014.

For all of the reasons discussed herein and in the Alvarez Declaration, it is respectfully submitted that the Settlement should be finally approved by the Court. Moreover, the Plan of Allocation was developed with Lead Plaintiff's economic consultants, reflects an assessment of the damages that may have been recovered had liability been successfully established at trial and is tailored to account for the litigation risks specific during various times of the Class Period.  As a result, the Plan of Allocation provides a fair and reasonable basis for allocating the Net Settlement Fund among Class Members, and therefore should be approved.

## II.    THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well-established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits."). Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  It is beyond question that "the public has an overriding interest in securing 'the just, speedy, and inexpensive determination of every action.'" *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006);[6] Fed. R. Civ. P. 1.  It is beyond question that "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).[7]  In deciding whether to

---

[6]  Citations are omitted throughout unless otherwise indicated.

[7]  The law consistently favors the compromise of disputed class action claims.  *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004);  *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986).

approve a proposed settlement of a stockholders' class action under Federal Rule of Civil Procedure 23(e), the court must first find that the proposed settlement is "'fair, adequate, and reasonable.'"[8]   The Ninth Circuit has provided factors which may be considered in evaluating the fairness of a class action settlement:

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625; *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Woo v. Home Loan Grp., L.P.*, No. 07-CV-202 H (POR), 2008 U.S. Dist. LEXIS 65144, at *8 (S.D. Cal. Aug. 25, 2008); *Church v. Consol. Freightways, Inc.*, No. C-90-2290-DLJ, 1993 U.S. Dist. LEXIS 6439 (N.D. Cal. May 3, 1993); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom., Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992). "'The relative degree of importance to be attached to any particular factor will depend upon . . . the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case.'" *Woo*, 2008 U.S. Dist. LEXIS 65144, at *8 (quoting *Officers for Justice*, 688 F.2d at 625).

The district court must exercise "sound discretion" in approving a settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375.  In exercising its discretion,

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the

---

[8]   *Pac. Enters.*, 47 F.3d at 377; *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice*, 688 F.2d at 625.  The Ninth Circuit defines the limits of the inquiry to be made by the court in the following manner:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.  Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what ***might*** have been achieved by the negotiators.

*Id.*

Courts have consistently held that the function of a judge in reviewing a settlement is not to rewrite the settlement agreement reached by the parties or to try the case by resolving issues intentionally left unresolved.  *See, e.g.*, *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) ("Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.  They do not decide the merits of the case or resolve unsettled legal questions.").  Therefore, courts have taken a liberal approach toward approval of class action settlements, recognizing that the settlement process involves the exercise of judgment and that the concept of "reasonableness" can encompass a broad range of results.  "'In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'"  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).  "As the Ninth Circuit has noted, 'Settlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion.'"  *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. MDL C-07-1841 (EMC), 2011 U.S. Dist. LEXIS 84541, at *11 (N.D. Cal. Aug. 2, 2011) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998)).

When examined under the applicable criteria, this Settlement is a highly favorable result for the Class.  Lead Plaintiff's counsel believe that there are serious questions as to whether a more favorable monetary result could be attained after summary judgment, trial, and the inevitable post-trial motions and appeals.  Alvarez Decl., ¶¶5, 8-10, 78-83.  The Settlement achieves a substantial and certain recovery for the Class and is superior to the possibility that were the Litigation to proceed to trial, there could be no recovery at all.  As discussed below, an analysis of the relevant factors demonstrates that the Settlement merits this Court's final approval.

## III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.   The Settlement Enjoys a Presumption of Reasonableness Because It Is the Product of Arm's-Length Settlement Negotiations

The Settlement, which was extensively negotiated between the parties with the substantial assistance of Judge Phillips, provides a substantial and certain cash benefit to the Class in the amount of $7.7 million.  The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  Here, the Settlement enjoys a presumption of fairness because it is the product of extensive arm's-length negotiations conducted by experienced and capable counsel with a firm understanding of the strengths and weaknesses of their respective client's positions.[9]

The settlement negotiations were at all times hard-fought and at arm's length.  During these negotiations, Lead Counsel zealously advanced Lead Plaintiff's positions and were fully prepared to continue to litigate rather than accept a settlement that was not in the best interest of the Class.  The parties participated in a formal mediation

---

[9]   *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997) ("the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery ha[s] taken place create[s] a presumption that the agreement is fair"), *aff'd*, 151 F.3d 1234 (9th Cir. 1998); *Ellis*, 87 F.R.D. at 18.

session with Judge Phillips on August 6, 2013, that involved an extensive analysis of the Class' claims and the defenses that would be asserted by Defendants.  Prior to the mediation, both sides submitted comprehensive mediation statements which were provided to Judge Phillips and exchanged among the parties.  The parties also submitted and exchanged detailed reply briefs prior to the August 6, 2013 mediation. The parties did not reach an agreement to settle at the mediation despite their diligent and good faith efforts.  It was only after continued settlement negotiations among the parties, with the assistance of Judge Phillips, did the parties reach an agreement-in-principle to settle the Litigation.  Ultimately, Judge Phillips issued a mediator's recommendation on October 16, 2013, which was separately accepted by the parties on October 23, 2013.  As a result of the negotiations and mediation, there can be no question that the Settlement is the result of hard-fought, arm's-length negotiations and is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice*, 688 F.2d at 625.

## B. The Strength of Lead Plaintiff's Case When Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation Supports Approval of the Settlement

In determining whether the proposed Settlement is fair, reasonable, and adequate, the Court should balance against the continuing risks of litigation, the benefits afforded to the Class and the immediacy and certainty of a substantial recovery. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  In other words,

> [t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, "It has been held proper to take the bird in hand instead of a prospective flock in the bush."

*Nat'l Rural*, 221 F.R.D. at 526.

In the context of approving class action settlements, courts attempting to balance these factors have recognized "that stockholder litigation is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *see also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977). This is even more so today in this post-PSLRA environment amid defendants' constant attempts to push the envelope and contours of the PSLRA. *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"). As one court noted: "An unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading standard." *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), *rev'd on other grounds and remanded sub nom., Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001).

While Lead Counsel believe that the Litigation has significant merit, they recognize that Lead Plaintiff faced numerous risks and uncertainties and were well aware that many other similar actions have been prosecuted in the belief that they were meritorious, only to lose on dispositive motions, at trial, or on appeal. The Settlement recognizes the risks of complex litigation involving difficult legal and factual issues. As discussed herein and in the Alvarez Declaration, the risks of continued litigation when weighed against the substantial and certain recovery for the Class confirms the reasonableness of the Settlement. The Settlement is unquestionably better than another distinct possibility – no or little recovery for the Class.

### 1.     The Risks of Proving Liability

Lead Plaintiff's case centered on allegations that Defendants misrepresented the true customer demand for Genoptix's primary source of revenue – diagnostic cancer testing services, that demand for the Company's services was being significantly and negatively impacted by its operation as an out-of-network healthcare provider and that it had lost its largest customer account, the Georgia Cancer Center, due to

1   disagreements over billing issues.  As the true facts became available to the investing

2   public, it caused the value of Genoptix securities to decline.

3          Lead Plaintiff believes that based on the evidence adduced to date, including

4   interviews with former Genoptix employees and the review of over 57,000 pages of

5   documents produced by Defendants, they had a good case as to liability and would be

6   able to prove that Defendants knowingly misrepresented Genoptix's business,

7   including Class Period statements about strong customer demand which caused the

8   price of Genoptix securities to be artificially inflated.  While the Court's March 22,

9   2013 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss

10  Plaintiffs' Amended Consolidated Class Action Complaint ("March 22 Order"),

11  dismissed any claim relating to Defendant's alleged misstatements made prior to

12  February 25, 2010, the Court explicitly noted that portion of Defendant's motion to

13  dismiss was granted without prejudice to Lead Plaintiff seeking leave to reassert those

14  claims based on evidence produced during discovery.  March 22 Order at 14.  While

15  Lead Plaintiff believes that its claims are strong and each of its claims are supported

16  by documentary evidence, including those claims dismissed in the March 22 Order,

17  getting past summary judgment and establishing liability at trial would by no means

18  be guaranteed.  Defendants have adamantly denied any liability and have asserted

19  from the outset that they possessed absolute defenses to Lead Plaintiff's claims.

20         One of the more difficult issues going forward would be Lead Plaintiff's ability

21  to prove scienter, *i.e.*, that Defendants acted with knowledge of or with recklessness as

22  to the alleged falsity of their statements and omissions.  A defendant's state of mind in

23  a securities case is often the most difficult element of proof and one which is rarely

24  supported by direct evidence such as an admission.  *See In re Telik, Inc. Sec. Litig.*,

25  576 F. Supp. 2d 570, 579 (S.D.N.Y. 2008).  Thus, it was quite possible that Lead

26  Plaintiff would procure documentary and testimonial evidence from all Defendants

27  and others with knowledge about the relevant facts, yet not be able to adduce

28  sufficient evidence to satisfy their burden of proof on this issue at trial.  Defendants

1   had previously argued, and would be expected to argue again at summary judgment

2   and/or trial, that Lead Plaintiff would not be able to demonstrate scienter because they

3   could not show Defendants acted deliberately or recklessly.   The Individual

4   Defendants would also continue to argue that because all of their stock sales were

5   made pursuant to pre-defined 10b-5-1 plans which were entered into before the Class

6   Period, and that their Class Period stock sales were consistent with their prior trading

7   history, that these facts would negate any inference of scienter in the eyes of a jury.

8       Lead Plaintiff believes that it would present sufficient evidence to support its

9   claims, including its ability to successfully reassert its claims that had been dismissed

10  by the Court.  Lead Plaintiff, however, was aware that Defendants would present

11  counter-evidence and other substantial obstacles to obtaining a judgment in their favor

12  at trial.  Moreover, there was no certainty that additional discovery would tend to

13  support or disprove Lead Plaintiff's allegations.  For example, Defendants indicated

14  during the discovery process that they would strenuously oppose Lead Plaintiff's

15  attempt to reassert the dismissed claims and present extensive evidence to undermine

16  Lead Plaintiff's position.

17      Assuming Lead Plaintiff survived the anticipated motion(s) for summary

18  judgment after completion of discovery, presenting these complex issues to a jury

19  posed a particular risk to Lead Plaintiff's hopes for success at trial.  Lead Plaintiff

20  could not be certain that a jury would see through the complexity of the underlying

21  facts to the heart of the alleged fraud.  Moreover, the risks of establishing liability

22  posed by complex issues with conflicting testimony and evidence would be

23  exacerbated by the following risks inherent in all shareholder litigation, including the

24  unpredictability of a lengthy and complex jury trial, the risk that witnesses could be

25  unavailable or jurors could react to the evidence in unforeseen ways, the risk that a

26  jury would find that some or all of the alleged misrepresentations were not material,

27  and the risk that the jury could find that Defendants believed in the appropriateness of

28  their actions at the time.

### 2.    The Risks of Proving Loss Causation and Damages

Even if Lead Plaintiff was successful in establishing liability, it faced substantial risks in proving loss causation and damages.  There is no question that Defendants would, as they did in their motions to dismiss, contest loss causation if litigation continued.  The United States Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005), and subsequent cases interpreting *Dura*, have made proving loss causation even more difficult and uncertain than in the past. *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 260 (D.N.H. 2007) ("Proving loss causation would be complex and difficult.").  Two examples illustrate this point.  In *In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010), the court granted summary judgment in defendants' favor holding that shareholder plaintiffs failed to present sufficient evidence to establish loss causation under Rule 10b-5.  While the Ninth Circuit reversed the decision, the court in *In re Apollo Grp., Inc. Sec. Litig.*, No. CV 04-2147-PHx-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), *rev'd*, No. 08-16971, 2010 U.S. App. LEXIS 14478 (9th Cir. June 23, 2010), on a motion for judgment as a matter of law, overturned a jury verdict in favor of shareholders based on insufficient evidence presented at trial to establish loss causation.[10]

The amount of damages incurred by Class Members would also have been hotly-contested at trial.  Damages in securities class action cases are always difficult to prove.  At trial, the damage assessments of Lead Plaintiff's and Defendants' experts were sure to vary substantially, and in the end, this crucial element at trial would have been reduced to a "battle of the experts." *Tyco*, 535 F. Supp. 2d at 260-61 ("even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of

---

[10]    *See also In re BankAtlantic Bancorp, Sec. Litig.*, No. 07-61542-CIV-UNGARD, 2011 U.S. Dist. LEXIS 48057 (S.D. Fla. Apr. 25, 2011) (court granted defendants' judgment as a matter of law on the basis of loss causation, overturning jury verdict and award in plaintiff's favor), *aff'd*, 688 F.3d 713 (11th Cir. 2012); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (finding no loss causation and overturning $81 million jury verdict).

1  the experts' over damages").  The determination of damages is a complicated and

2  uncertain process involving conflicting expert testimony.  Expert testimony could rest

3  on many subjective assumptions, any of which could potentially be rejected by a jury

4  as speculative or unreliable.  Lead Plaintiff would have likely faced a motion *in limine*

5  by Defendants to preclude Lead Plaintiff's damage expert's testimony under the

6  *Daubert* test and risked a decision that a valuation model might not be admissible in

7  evidence.

8       The reaction of a jury to battling expert testimony is highly unpredictable and in

9  such a battle, Lead Counsel recognize the possibility that a jury could be swayed by

10  convincing experts for the Defendants, and find that there were no damages or only a

11  fraction of the amount of damages Lead Plaintiff contended.  *See, e.g.*, *Warner*

12  *Commc'ns*, 618 F. Supp. at 744-45 (approving settlement where "it is virtually

13  impossible to predict with any certainty which testimony would be credited, and

14  ultimately, which damages would be found to have been caused by actionable, rather

15  than the myriad nonactionable factors such as general market conditions"); *In re*

16  *Veeco Instruments Sec. Litig.*, No. 05 MDL 0165 (CM), 2007 U.S. Dist. LEXIS

17  85629, at *30 (S.D.N.Y. Nov. 7, 2007) ("The jury's verdict with respect to damages

18  would depend on its reaction to the complex testimony of experts, a reaction which at

19  best is uncertain.").

20       Even if Lead Plaintiff established significant damages at trial, Defendants

21  would likely insist on a lengthy and adversarial claims process, which could take years

22  and require significant time and expense from all parties, including absent Class

23  Members.  For instance, in *Household*, a large securities class action case filed in

24  2002 in which Robbins Geller is serving as lead counsel, plaintiffs obtained a jury

25  verdict in their favor on May 7, 2009 after a month-long trial and years of costly and

26  contentious litigation.  *Jaffe v. Household Int'l Inc.*, No. 1:02cv05893 (N.D. Ill.) (Dkt.

27  No. 1611).  Today, almost five years after the jury verdict and over 11 years since the

28  action was initiated, and despite the parties' and the court's diligence, a judgment was

1    just recently entered for $2.4 billion.  But the claims process is still not complete as

2    counsel continue to litigate objections to claims with losses of more than $650 million,

3    and the appeal has yet to be adjudicated, all of which constitute continuing risk to the

4    class.  It is for reasons such as this that securities class actions are sometimes settled

5    and compromised even after a trial and verdict in plaintiffs' favor.  *E.g.*, *Sekuk Global*

6    *Enters. v. Apollo Grp. Inc.*, No. 2:04-cv-02147-JAT (D. Ariz).[11]   Even if Lead

7    Plaintiff prevailed and obtained a substantial judgment after trial, there is little doubt

8    that Defendants would have filed post-trial motions and/or appeals.  The post-trial

9    motions and appeals process would have likely spanned several years, during which

10   the Class would have received no distribution on any damage award.  In addition, a

11   post-trial motion or appeal of any verdict would carry the risk of reversal, in which

12   case the Class would receive no recovery after having prevailed on the claims at trial.

13          Finally, even with a judgment in hand, in today's corporate environment with

14   the number of bank failures and corporate debacles such as Lehman Brothers, J.P.

15   Morgan, Enron, Tyco, and WorldCom demonstrate, there is no guarantee that a

16   significant judgment entered years down the road would be collectable.  Therefore, the

17   amount of damages the Class would actually recover if successful at trial is uncertain.

18          After careful consideration of all of these factors, the Settlement is in the best

19   interests of the Class.  Although Lead Counsel believes that the case is meritorious, its

20   experience has taught it that such risks can render the outcome of a trial extremely

21   uncertain.  *See In re Mfrs. Life Ins. Co. Premium Litig.*, No. MDL 1109, 1998 U.S.

22   Dist. LEXIS 23217, at *17 (S.D. Cal. Dec. 21, 1998) ("even if it is assumed that a

23   successful outcome for plaintiffs at summary judgment or at trial would yield a greater

---

24   [11]   *See also* Kevin LaCroix, *After Rare Trial and Lengthy Appeals, Apollo Group*
25   *Securities Suit Finally Settles for $145 Million*, The D&O Diary (Dec. 5, 2011)
     (discussing settlement of securities class action for $145 million, despite initial
26   estimates of $277.5 million value, after verdict in plaintiffs' favor, granting of
     defendants' motion for judgment as a matter of law and subsequent reinstatement of
27   verdict by the Ninth Circuit), *available at* http://www.dandodiary.com/
     2011/12/articles/securities-litigation/after-rare-trial-and-lengthy-appeals-apollo-group-
28   securities-suit-finally-settles-for-145-million/.

1  recovery than the Settlement – which is not at all apparent – there is easily enough

2  uncertainty in the mix to support settling the dispute rather than risking no recovery in

3  future proceedings").

4        **3.    The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement**

5

6        The immediacy and certainty of a recovery is a factor for the Court to balance

7  in determining whether this proposed Settlement is fair, adequate, and reasonable.

8  Courts consistently have held that "[t]he expense and possible duration of the

9  litigation should be considered in evaluating the reasonableness of [a] settlement."

10 *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also Officers for*

11 *Justice*, 688 F.2d at 626.

12       As noted above, Defendants have demonstrated a commitment to defend this

13 case through and beyond trial, if necessary, and are represented by well-respected and

14 highly capable counsel from Cooley LLP.  If not for this Settlement, the expense and

15 time of continued litigation would have been substantial.  As the court noted in *Ikon*,

16 which is applicable here:

17       In the absence of a settlement, this matter will likely extend for . . . years
         longer with significant financial expenditures by both defendants and
18       plaintiffs.  This is partly due to the inherently complicated nature of large
         class actions alleging securities fraud: there are literally thousands of
19       shareholders, and any trial on these claims would rely heavily on the
         development of a paper trial [sic] through numerous public and private
20       documents.

21 194 F.R.D. at 179.

22       As the securities claims advanced by Lead Plaintiff involve complex legal and

23 factual issues, additional document discovery, numerous depositions, and extensive

24 expert discovery and testimony would be necessary.  After completion of discovery,

25 Defendants' expected motion(s) for summary judgment would have to be briefed and

26 argued, a pre-trial order would have to be prepared, proposed jury instructions would

27 have to be submitted, and motions *in limine* would have to be filed and argued.

28 Substantial time and expense would need to be expended in preparing the case for

trial.  The trial itself would have been long, expensive, and uncertain and no matter the outcome, appeals would be virtually assured.  This would add considerably to the expense and duration of the action.

The legal issues are equally as complex – proving scienter, causation, and damages, would likely require expert testimony, as discussed above.  There exists no doubt that the Settlement will spare the litigants the significant delay, risk, and expense of continued litigation.  Many hours of the Court's time and resources have also been spared.  Moreover, even if the Class could recover a larger judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Class any recovery for years, which would further reduce its value.  The $7,700,000 settlement, at this juncture, results in an immediate and substantial tangible recovery, without the considerable risk, expense, and delay of discovery, summary judgment motion(s), and trial and post-trial litigation.  *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").  As the Ninth Circuit has made clear, the very essence of a settlement agreement is compromise, "'a yielding of absolutes and an abandoning of highest hopes'":

> "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation."

*Officers for Justice*, 688 F.2d at 624; *Ellis*, 87 F.R.D. at 19 (as a *quid pro quo* for not having to undergo the uncertainties and expenses of litigation, the plaintiffs must be willing to moderate the measure of their demands).

## C.    Lead Plaintiff Had Sufficient Information to Determine the Propriety of Settlement

While the Settlement comes before the end of the discovery process and dispositive proceedings, both the knowledge of Lead Counsel and the proceeding themselves have reached a stage where an intelligent evaluation of the Litigation and the propriety of settlement could be made.  *See Officers for Justice*, 688 F.2d at 625;

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  As discussed above and in the Alvarez Declaration, Lead Counsel conducted an extensive investigation of the facts alleged, reviewed and analyzed numerous witnesses accounts, including six witnesses who provided information that helped form the basis of Lead Plaintiff's allegations in the Complaint and Amended Complaint, consulted with an expert in damages, fully briefed two motions to dismiss by Defendants, demanded and obtained discovery from Defendants, reviewed and analyzed over 57,000 pages of documents produced by Defendants; and propounded discovery requests on Defendants.  The parties also participated in extensive settlement negotiations, including an all-day mediation session where the parties' claims and defenses were fully vetted.  Prior to the mediation, the parties submitted to Judge Phillips and exchanged detailed opening and reply mediation statements which further highlighted the factual and legal issues in dispute.  As a result, Lead Counsel were able to assess the strengths and weaknesses of the claims asserted and resolve the Litigation on a highly favorable basis for the Class.  *See Mego Fin.*, 213 F.3d at 459 ("'"formal discovery is not a necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision about settlement'").

### D.  The Recommendations of Experienced Counsel After Extensive Litigation and Arm's-Length Settlement Negotiations Favor the Approval of the Settlement

As the Ninth Circuit observed in *Rodriguez*, "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action. 563 F.3d at 965.  Courts have recognized that "'"[g]reat weight" is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'"  *Nat'l Rural*, 221 F.R.D. at 528.  As courts have recognized, "'[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'"  *Omnivision*, 559 F. Supp. 2d at 1043.  Lead Counsel, having carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence to support the claims asserted against Defendants, the likelihood of

prevailing on these claims, the risk, expense, and duration of continued litigation, and the likely appeals and subsequent proceedings necessary if Lead Plaintiff did prevail against Defendants at trial, have concluded that the Settlement is an excellent result for the Class.  Lead Counsel have significant experience in securities and other complex class action litigation and have negotiated numerous other substantial class action settlements throughout the country. *See* www.rgrdlaw.com.  Here, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *Omnivision*, 559 F. Supp. 2d at 1043.  Importantly, the Lead Plaintiff, who was active in the Litigation, authorized counsel to settle the Litigation and supports the reasonableness of the Settlement.  Lead Plaintiff Decl., ¶4.

## IV.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Lead Plaintiff also seeks approval of the Plan of Allocation of the Settlement proceeds.  The Plan of Allocation is set forth in full in the Notice mailed to potential Class Members.

Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of the Federal Rules of Civil Procedure is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair and reasonable. *See Ikon*, 194 F.R.D. at 184; *Class Plaintiffs*, 955 F.2d at 1284.  District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel. *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

The Plan of Allocation provides an equitable basis to allocate the Net Settlement Fund among all Class Members who submit an acceptable Proof of Claim and Release.  Here, the Plan of Allocation was developed by Lead Counsel with the

1  assistance of their economic consultants and reflects an assessment of the damages

2  that could have been recovered at trial under the theories asserted in the case by Lead

3  Plaintiff as well as the Court's March 22 Order dismissing any claims based on

4  Defendant's alleged misstatements, made prior to February 25, 2010, and the

5  likelihood of Lead Plaintiff's ability to reassert those claims.[12] As a result, the Plan of

6  Allocation will result in a fair distribution of the available proceeds among Class

7  Members who submit valid claims and therefore should be approved.

8  **V.      CONCLUSION**

9         For all the reasons set forth above, in the Alvarez Declaration, and the entire

10  record, the Settlement and Plan of Allocation warrants this Court's final approval.

11  DATED:  May 8, 2014                         Respectfully submitted,

12                                              ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
13                                              X. JAY ALVAREZ
                                                JEFFREY D. LIGHT
14                                              JULIE A. KEARNS

15

16                                                     s/ X. Jay Alvarez
                                                ─────────────────────────
17                                                    X. JAY ALVAREZ

18                                              655 West Broadway, Suite 1900
                                                San Diego, CA  92101-3301
19                                              Telephone:  619/231-1058
                                                619/231-7423 (fax)

20                                              Lead Counsel for Lead Plaintiff

21

───────────────────────

22  [12]   *See, e.g.*, *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S.

23  Dist. LEXIS 88886, at *15 (N.D. Cal. Nov. 26, 2007) (recognizing that settlement
    proceeds may be distributed in accordance with strengths and weaknesses in a case

24  and approving a settlement and plan of allocation which allocated 10% of the
    settlement proceeds to dismissed claims) (collecting cases) (citing *Omnivision*, 559 F.

25  Supp. 2d at 1045 ("It is reasonable to allocate the settlement funds to class members
    based on the extent of their injuries or the strength of their claims on the merits.")); *In*

26  *re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *38
    (C.D. Cal. June 10, 2005) (Concluding as fair, a plan of allocation which "'makes

27  interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of
    class members' individual claims and the timing of purchases of the securities at

28  issue.'").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VANOVERBEKE MICHAUD
  & TIMMONY, P.C.
MICHAEL J. VANOVERBEKE
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)

Additional Counsel for Lead Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 8, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 8, 2014.

           s/ X. Jay Alvarez
           X. JAY ALVAREZ

           ROBBINS GELLER RUDMAN
              & DOWD LLP
           655 West Broadway, Suite 1900
           San Diego, CA  92101-8498
           Telephone:  619/231-1058
           619/231-7423 (fax)

           E-mail:  JayA@rgrdlaw.com

# Mailing Information for a Case  3:10-cv-02502-CAB-DHB Construction Workers Pension Trust Fund v. Genoptix, Inc et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Peter M Adams**
  padams@cooley.com,cdeatrick@cooley.com,smiyajima@cooley.com,maraujo@cooley.com

- **Xavier Jay Alvarez**
  jaya@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Koji F Fukumura**
  kfukumura@cooley.com,chourani@cooley.com

- **William E Grauer**
  wgrauer@cooley.com,hannummc@cooley.com

- **Julie A. Kearns**
  jkearns@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Mary Kathryn Kelley**
  mkkelley@cooley.com,msalas@cooley.com

- **Rosemary Farrales Luzon**
  rluzon@sfmslaw.com,pleadings@sfmslaw.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Erik David Peterson**
  epeterson@ktmc.com,yjayasuriya@ktmc.com,knguyen@ktmc.com,kweiland@ktmc.com,arobles@ktmc.com

- **David C Walton**
  davew@rgrdlaw.com,hdemag@rgrdlaw.com,e_file_sd@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)